1-6-2-2-5-6 Giovanni Depianti et al. v. Jan-Pro Franchising Incorporated Good morning, Your Honors. May it please the Court, I'm Shannon Lisserian for Appointee of Giovanni Depianti v. Adelaide Pagano. May I reserve two minutes? Yes. Thank you. Your Honors, I'd like to begin by focusing on the raised judicata argument here. I believe the defendant recognizing the weakness of its position that the district court properly entered summary judgment focuses on raised judicata. So I want to point out a few particular points about that. In the parallel Georgia litigation in this case, the company Jan-Pro was the plaintiff in a declaratory judgment action. It never actually obtained final judgment on its declaratory judgment claim. Instead, it dropped the case before any final judgment was ever entered. In our view, the district court accepted the argument that because the Georgia Supreme Court had denied certiorari that the intermediate appeal court decision in favor of the company... Wasn't there a stipulation signed by the parties that the Georgia action would be dismissed with prejudice and that the defendant there waived their right to appeal? Yes. So two points. One is, first of all, that stipulation was never before the district court. It wasn't in the record. But secondly, the stipulation... Well, we can take judicial notice of it, can't we? Well, yes. If you want to take judicial notice of it, what I want to point out is that the defendant, well, the plaintiff in that action, Jan-Pro, stipulated to dismissal of its declaratory judgment claim. So it dropped its case before obtaining a final judgment in the Georgia Superior Court. We still had arguments in the Georgia courts that had this not been dismissed, had they not dismissed the case, that we would have pursued. One of them was that the Superior Court in Georgia now needed to sort out which decision to follow, the Georgia Court of Appeals decision or the subsequent mass Supreme Judicial Court decision. Jan-Pro just assumes that the reason the Georgia Supreme Court denied cert was because it agreed with the Georgia Court of Appeals decision, but it's possibly possible... That's a very logical assumption, isn't it? No, I think the more logical assumption is that just several days after the SJC ruled, there was no reason for the Georgia Supreme Court to grant cert. Any appellate court that I'm aware of, if the appellate court thinks that the decision of some other court has made a material difference to a case before it, would remand for reconsideration in light of the new decision, the SJC decision. They didn't. They denied review. That gives binding effect. That doesn't set the stage for reconsideration by the Georgia Court of Appeals. That makes its judgment, that makes its decision final. Whether or not there should have been some further proceedings in the Superior Court is a different question. Well, there were further proceedings in the Superior Court, and in the Superior Court, had they not dropped the case, we would have made the argument that the SJC decision superseded and reversed the Court of Appeals decision, and we also still had preserved the issue of personal jurisdiction. Absolutely, and if I'm puzzling, I could be wrong. In 1758, that's the statute that we're trying to give effect to, the federal statute, for res judicata purposes, right? Yes. Okay, and so that uses the word judgment. Why isn't the judgment we're giving effect to the judgment issued by the Georgia Court of Appeals? Because a judgment, my understanding is that, I believe we cited this in briefs, the judgment refers to a judgment in a court of competent jurisdiction. Which the Georgia Court of Appeals was. But the trial court, there were still further proceedings. Yes, I understand that. That doesn't change the finality of the judgment of the Georgia Court of Appeals. That just means your client might get relief in his case. But the thing that we're giving effect to is the binding final judgment of the Georgia Court of Appeals. But that wasn't a final judgment because we could still preserve the issue of personal jurisdiction. Not with respect to the Georgia Court of Appeals judgment. No, with respect to the Georgia Court's jurisdiction. Correct, but that's a different case. He wasn't deferring to this. I'm sorry? In other words, doesn't the Georgia Court of Appeals itself issue a judgment? We do, and we issue a decision, even when there's a remand, don't we? And that's the mandate issues. The mandate issues, and it goes back to the trial court. Once the mandate issues, we still have a final judgment that we've issued. And that's what he's giving effect to. So what is the relevance of what happens below or doesn't? Because we had still contested personal jurisdiction. That's wonderful. If he was going to defer to the final judgment of the superior court, there would be no final judgment to have yet issued with respect to that. But there, in fact, was a state court judgment to which mandate issues, as I understand, there's no contention that it didn't. So I just don't understand why that's not the judgment we're talking about. Because every time that I've seen an appellate court issue a judgment, including here, it goes back down to the actions of the court. You're right. It does go back down. That doesn't mean a judgment wasn't issued by the Court of Appeals. But there was an ambiguity as to where things stood. Not with respect to whether there was a final judgment by the Court of Appeals of Georgia. It didn't dismiss the case with prejudice. But it issued a judgment on the question which resolved this issue, which I don't see why the Massachusetts Federal District Court isn't entitled to say, I'm going to give effect to that judgment. Because it had been superseded by the Massachusetts Supreme Judicial Court. That's a different argument. That's an argument that implicates moiety. That's fine if you want to argue that argument, but that's a different argument. Yes, that is and was our argument that had proceedings continued in the Superior Court, if they hadn't dropped their case, if Jamper had not dropped their case, we would have argued that the SJC decision... Did you drop your case also? No, no, no, it was their case. They were the plaintiff. But you filed a cross-motion. So didn't you drop your... But I wasn't seeking judgment. You were seeking judgment. I wasn't seeking judgment in that case. They were the plaintiff. They were seeking a declaratory judgment. When they decided they weren't going to pursue it all the way to final judgment, we said, fine, we'll keep fighting this out in Massachusetts. We believe the SJC decision should prevail over an intermediate Georgia court and an important issue of Massachusetts law. They decided to drop it, and so that issue was never finally decided. So what we noted in our library, a couple of cases, the Jiffy Lube case, 813-F-SUP-100, and the Casper case, 575-F-SECOND-530, that when there is a stipulation of dismissal of a declaratory judgment action, which is what happened here, it's a question about what the party's intent was with respect to whether or not judgment was to be entered. Our intent was clearly that we believed there were still issues to be fought, that they hadn't prevailed on their declaratory judgment action. We believed that we could still contest personal jurisdiction because it had been preserved in Georgia courts. Georgia law allows personal jurisdiction to be argued at any time, raised at any time in the course of a case. And we also believed that the issue still needed to be screwed down with what happens in line with the courts, that we have this Georgia Court of Appeals decision, but now we have this superseding Massachusetts SJC decision that we believe is contraband. And just so I understand your argument with respect to Moyni, suppose, just take a simpler case, Georgia Court of Appeals issues its decision, same text of the decision that they issued, and that ended the Georgia case. It resulted in a final judgment, end of story. Before the federal district court issues its decision, the SJC answer comes back. It comes back after the Georgia Court of Appeals has issued its decision, but before the cert petition in Georgia has been resolved. Is your position that even though there is nothing to be done back in the trial court, that intervening SJC decision still has to be given effect, or does your decision about how we're supposed to understand the effect of Moyni on the issue that we have to resolve, that the reason the SJC decision has to be given effect is solely because things could still be happening in the trial court? Well, things could still be happening in the trial court. In the situation that you've raised, things could still be happening in the Supreme Court. The case wasn't. I understand, but then cert's denied. Okay, and I think there's a question about whether there are things still to be done in the trial court, and here there were. And if that was not the case, would you say that the intervening SJC decision had to be given effect or not? That is a different situation. I understand it. But again, my understanding is that when an appellate court rules, what it's doing is it's ordering the trial court to enter judgment. And if that hadn't happened yet, I think there's still arguably something that could have and should have happened in the trial court before the case was over. What? What? Well, the Supreme Court denied cert. I mean, the Georgia Supreme Court denied cert. There was already a ruling by the appellate court. What? What's missing? Well, what's missing is that, again, it was unclear why, with no stated reason, what the Georgia Supreme Court meant when it denied cert. They didn't think that the SJC's opinion was inconsistent with the opinion of the appellate court. Or they might have decided the highest court of the state, whose law is at issue here, has already made a ruling. There's no reason for us to grant discretionary cert. In this case, it can go back down to be certain. There's no need for us to guess, because the effect of the denial of cert is to make the judgment of the Georgia Court of Appeals final. But, again, I say that the judgment would need to be entered in the trial court. Why? Why? Why? You haven't given an answer to that question yet, as far as I can tell. Because we were still contesting jurisdiction. Hold on. Hold on. Because the Superior Court had filed against you on jurisdiction, had certified that issue for immediate appeal, and you had chosen not to file a cross-appeal with the Court of Appeals. Right. So that issue was no longer an obstacle to the entry of judgment. No, Judge Sully, if I can respond to that, that's not true. Under Georgia law, you can challenge personal jurisdiction any time. We chose not to at that interlocutory point. By certifying... Judge Wolf got this wrong. By certifying the issue for interlocutory appeal, we could have, if we chose, taken that appeal at that time, but we were not obligated to it. But can you raise it after you have appealed? There's no Georgia case you cite that suggests that even after you have appealed, because you did a cross-appeal. No, we did not. The question is whether you should have. We did not cross-appeal. But you did move for race judica out of effect in the mass court after you won in Georgia law. That's true. Right, but I mean, we lost, so we can't be precluded by having race judica. That was not... Let me just say, suppose you won the law after the Georgia Court of Appeals issued its decision. And in the Superior Court, I don't know what they call it, Superior Court in Georgia? Yes, Superior Court. Superior Court in Georgia says, you know what, you're right, no personal jurisdiction. What would have happened to the Georgia Court of Appeals judgment? Is that no longer a valid judgment? Correct. No, that's not true. Don't you have to move to vacate it? Well, then we would have moved to vacate it. But until you move to vacate it, it is a final judgment. But the point is that the case in Georgia was not done. Just answer my question. It wasn't a final judgment. It would not have been a final judgment. You're not answering my question. Until you move to vacate it, it's not vacated, correct? It would be a judgment, but not a final judgment in the case. It would have been an interlocutory appellate ruling, not a judgment, not a final judgment. And if I can just, I was just going to explain to the judge those decisions that he cited, stating that we had to pursue the appeal because he certified, because the Georgia Superior Court certified the personal jurisdiction issue. His cases, the cases that he cited do not say that. First of all, in the committee they say that. You've made that argument in your brief, haven't you? Yes. Yes. You've made that argument in your brief, and your time is up. Okay. Thank you. May it please the Court. I'm Jeffrey Rosen on behalf of the appellee, JANPRO Franchising International. With me, although not at the table, is Emily Nelson, also on brief, and Catherine Brooks from JANPRO Franchising International. May it please the Court. In our addendum to our brief, Page 2 is an appellant arguing for application of raised judicata in his favor when he initially prevailed in the Georgia Superior Court. In our addendum is the appellant, DiPianti, stipulating to the dismissal of his case in Georgia with prejudice and with rights of appeal waived. The cases where there might be an exception to raised judicata are cases where you can't determine if the merits on a matter were decided. Here it's very clear that the merits on a matter were decided. And this is a textbook case for application for raised judicata. Could you just explain, am I right in thinking that the way to answer this question is to determine what judgment means in 1758? Your Honor, I believe that you are right. Okay, so what does judgment mean in 1758? Does it apply to the, does the Georgia Court of Appeals issue a judgment? It does, Your Honor. Okay, was that judgment ever vacated? It was not. Okay, is that a judgment under 1758? It is, Your Honor. Do you have any authority that tells me it is even when the case is going to be re-landed back to the Superior Court for entry of final judgment in the case? I believe we cited authority in our brief that talks about when raised judicata is effective, and that case and those cases talk about adjudication on the merits for purposes of entry of a judgment. So I think that that case law gets you to where you are. Do I have a specific case that says exactly what Your Honor just said? Standing here right now, I can't think of one off the top of my head. But I think that the effect of what Your Honor is saying is embodied in the case law that we cited because once the rights of appeal are exhausted, which they clearly were in this case, whether by virtue of the denial of cert or by virtue of the eventual stipulation, once those rights of appeal are exhausted, there's nothing more to do in a case. Yeah, but see, I take that point, but I'm asking a slightly different point, which is that even if there is something more to do in the case post the decision of the Georgia Court of Appeals, does the fact that the Georgia Court of Appeals itself issued a judgment, which can't itself be appealed, because it can't be, is that a judgment within the meaning of 1758? I'm trying to figure out whether that's true, independent of whether I can figure out what was left to be done below or not. It has to be, Your Honor, because that's the finality that's going on in Georgia. There is no more finality to be had, so it has to be. The concept that the Supreme Judicial Court here in its answer to certified questions somehow upended the Georgia Court of Appeals ruling was fully examined by Judge Wolfe below, and what that answer to certified questions said was look at JPI directly, apply the statute. Before you get to that, just to follow up with Judge Behrens, was the stipulation dismissal, that was entered in the Superior Court, is that correct? Correct, Your Honor. Was that intended to be the final step, in other words, we have a judgment in the Court of Appeals, was that dismissal step intended to be the final judgment? Absolutely, Your Honor. Or raised to the counter purposes? In a little bit further background. Do we look to that step, or do we look to the Court of Appeals judgment? You look to the Georgia Court of Appeals judgment on the merits. The Georgia Court of Appeals then necessarily remanded the matter back to the Georgia Superior Court. The parties may have entered that stipulation. So why would the remand order not have been consistent with your victory at the Superior Court level? Why was it a dismissal with prejudice versus entry of judgment for the plaintiff? The reason that happened, Your Honors, is a little bit outside the record, but there was a second defendant in Georgia, a man named Hyun Ki Kim. And the defendant and the plaintiff no longer wanted to pursue that litigation any further in Georgia. So that represented the end of that matter as well. We could not stand here. That doesn't mean that it didn't impact the defendant that's before us on appeal. It did not, Your Honor. It did not impact it at all. We could not stand here or in New Jersey where Mr. Kim was from and argue that the Georgia Court of Appeals ruling has preclusive effect as to him. Then I would accept counsel's argument that somehow the Massachusetts law ruling can't possibly give preclusive effect to Kim and that stipulation with prejudice can't possibly be a judgment on the merits as to Kim. We're not arguing that. That's not what this case is about. Counsel, are you saying that the Georgia Court of Appeals judgment, at least one cert was denied, ended the matter as to DePianti left pending in the superior court your claims against Kim and the practical effect of the stipulation was only to dismiss the claims with prejudice against Kim because you didn't want to litigate those and had no effect on DePianti because that judgment was already final? But it doesn't say that. It doesn't say that. It's a pure and simple dismissal of the full action with prejudice and with all rights of appeal waived. But doesn't that wipe out your judgment? It does not, Your Honor, because under raised judicata purposes you have a judgment on the merits from the Georgia Court of Appeals, which is final. Doesn't that get wiped out once you dismiss it? It does not, Your Honor, because what raised judicata is concerned with is whether something was actually litigated on the merits and actually decided. And here we have a clear case of that. I guess if I'm tracking, sometimes a court of appeals judgment can get mitigated after it's issued. Correct, Your Honor. And I suppose if the case was live enough, below, maybe there was still some opportunity for that to happen. I don't know enough about Georgia law. But if we think about it in terms of Moiti, and we accept your proposition that we had a final judgment on the merits, the relevant merits that would have raised judicata effect in consequence of the Georgia Court of Appeals judgment, I'm just trying to think about whether normally, at least it seems to me there's a pretty good argument that you could read Moiti to say then the intervening state court judgment by the SJC is irrelevant because we already had the final judgment. And that can't get disrupted. The thing that's a little bit maybe sideways to that is that if the case itself was still alive below because of this odd thing that happened when it went back from the Georgia Court of Appeals, was there any prospect that that Georgia Court of Appeals judgment was in danger or somehow could be vacated if personal jurisdiction was then moved such that the general rule of Moiti, that we just give effect to the final state court judgment, should be relaxed so that we can give practical effect to the intervening SJC decision insofar as it was trying to get mass law right at some level? Do you follow what I'm saying? I do, Your Honor. So what do you think of that? When I think of it, the plaintiff twice requested and made the argument that personal jurisdiction was not valid. So this will get to your point. They twice made that argument. It was denied twice, including on summary judgment. But when the plaintiff, I'm saying it should be the defendant, DePianti, affirmatively moved for summary judgment in Georgia, he gave him any right to challenge personal jurisdiction. There was nothing left to do in Georgia with respect to DePianti at all. The only thing left in Georgia was with regard to Mr. Kim. Okay? So we get into a situation where you could enter partial judgment for one defendant and not full judgment for the entire case. It was unnecessary. The parties were done in Georgia. And because the parties were done in Georgia, the practical scenario there gets to Your Honor's question is that that's all she wrote, basically, down in Georgia. Except that's not all that she wrote. If you had written a stipulation that entered judgment for you and against DePianti and reserved anything else with respect to Mr. Lim, I wouldn't be having this problem. But that's not what your stipulation said. It's like you got a victory and then you voluntarily relinquished it. With all rights of appeal waived. It really has nothing more practically to do, and we had an adjudication on the merits. Nothing more at all. The adjudication on the merits, which the meritorious finding in your favor, wasn't preserved in a judgment before the superior court. You acted to do something else. It's as preserved as it could possibly be, Your Honor. Well, preserved as it could possibly be would have meant entry of judgment in your favor at the district court, excuse me, the superior court level. It would be an unnecessary step and one that would actually add a layer to the disruption of the principle of res judicata, which, as Your Honor knows, is a time-honored principle. Because when we enter our judgments, we remain with instructions to the district court to enter a judgment consistent with our order. And that didn't happen here. Your Honor, we did something that had the same practical effect. And res judicata is a very practical doctrine. It's a doctrine that's founded upon the practicalities of not having to relitigate a claim on the merits. That's been litigated, and here it clearly was. I'm just trying to think of how 1758 would work if it didn't work the way you were suggesting. So in order to be able to give res judicata effect in any case, you have to wait until, no matter how many rulings have been made in the course of a case by how many courts, all of those court judgments would have to be treated as non-binding until, however many years passed in the litigation that could go on for a very, very long time, until final judgment in the case was entered at the trial court level. Thank you, Your Honor. And I agree that that wouldn't make sense. The concept of res judicata, the doctrine of it, has been applied even in situations where parties stipulate for the dismissal of a matter with prejudice. And it's consistently applied in that situation even when the word judgment isn't on the docket. It gets there because its concern is the adjudication on the merits. So focusing on that concern, I feel like we have a textbook situation for application of that. Judge Wolf went further. He said, I've looked at the summary judgment record. I think that applying each of the prongs, the three prongs of Section 148B, the Massachusetts Independent Contractor Statute, JPI is not Mr. DiPianti's employer. But that's a slippery slope for you to argue to us because normally on res judicata, we wouldn't inquire into the correctness of the state court decision. And I'm not sure you want us to go there. We only go there in the alternatives, Your Honor. Yeah. We don't go there directly. Only if we find that there is no res judicata effect. Right. And so he clearly found, and I think there's been a lot of confusion in the courts in Massachusetts. Just on the merits point before you sit down, Am I right that the record shows that JANPRO required unit franchisees to have branding on their uniforms? JANPRO is a franchisor, and like any franchisor, it's going to ask that franchisees promote that brand in a uniform way, in a consistent way. Was that considered by the Georgia Court of Appeals in its ruling? Absolutely, Your Honor. They'd mentioned that fact? Well, they might not have mentioned that specific fact, but it was definitely in the record, and we have a very lengthy statement of facts in the record. The franchisor, and this is where there's some confusion below, and Your Honors could clear this up, is required to market and promote its brand consistently. It's a trademark issue. It's a licensing issue. So in the course of that, it's going to present here a commercial cleaning brand promotion. Just the line between uniforms and branding seems to me a little bit. Does it give any specifications about, it just says you have to wear the label, you can wear it on any old T-shirt, even saying, I hate JANPRO? Well, that would be a trademark concern for any license holder, so no. No juror could possibly think that suggested maybe there was a bit of a control relationship between JANPRO and the people wearing those brands? Not at all, Your Honor. Not at all, Your Honor. Particularly in this master structure, and if I might finish, Your Honors, particularly in the scenario whereby the federal law, as we cite 16 CFR 436.1, requires a franchisor to significantly control how its brand is used. It requires it. And so given that federal law, it would be helpful if Your Honors could clear up some confusion that's in the lower courts on that issue as well. Thank you so much. Thank you. Your Honors, I'm going to try to touch on a bunch of points really quickly in my remaining time. First of all, with respect to the stipulation of judgment issue, under Casper and Jafilov, I would submit that it's a question of what the intent of the parties was in entering that stipulation. And here, clearly, we didn't believe that this was entry of judgment for JANPRO because there were still remaining issues. Secondly, as we noted in our reply brief, even if you found that the Georgia Court of Appeals decision was a judgment for purposes of res judicata, but we cited in our brief cases that say that res judicata's preclusive force is extinguished by an intervening change in law, and we would submit that the SJC decision was a change in the law. And finally, on that point, we also noted that in order for res judicata to apply, the district court had an obligation to determine that the Georgia court was a court of competent jurisdiction. Thus, Judge Wolf could have and should have himself decided the issue about whether or not there was personal jurisdiction over deputanty, since we had argued that he had never stepped foot there. We put in our brief what our argument was, except for one time he drove through the state. That part gets a little tricky. After you're victorious, you ask Judge Wolf to give res judicata effect to the victory in the lower court. Right, but I believe that the principle of estoppel would only apply against us if we had won or not, and we didn't win on that point, so I don't think estoppel would apply. It would suggest that it was at least tolerable to conclude that it was a court of competent jurisdiction, though, wouldn't it? I'm not sure why that's not judicial estoppel. Excuse me? I'm not sure why that's not judicial estoppel, because you're taking an inconsistent position before the court. I believe there are cases that say that estoppel only applies if you're successful in taking such a position. We've also said the Hyatt case, which says that you, just simply because you move for summary judgment, but if at the same time you preserve your objection to personal jurisdiction, then you haven't waived the issue. And if I could just very briefly just say two sentences about the merits, if you get there. The SJC's decision in this case refers repeatedly to not only that the defendant passed a court rule, of course all three court rules have the statute, and I think it would be unprecedented for a judgment to be upheld saying that we hadn't even created a dispensive fact on any of the three factors when the courts have repeatedly come to the conclusion. We have some time concerns here, but it's in your brief, so we've read them. Yes, and JANPRO was the agent of misclassification here, unlike the other cases, which I believe goes directly to what the SJC was talking about here. There's no question JANPRO set up the whole system by which the workers would be classified as independent contractors that retained a right of control. It's in our brief. It's in your brief. Thank you very much.